**SO ORDERED.**

**SIGNED August 23, 2017.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RE:   DOUBLE EAGLE ENERGY SERVICES, LLC | CASE NO. 17-80717 |
| DEBTOR | CHAPTER 11 |

**FINAL ORDER ON MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION SECURED FACTORING AGREEMENT, (II) GRANTING LIENS TO POST-PETITION LENDER, AND (III) APPROVING NOTICE PROCEDURE**

This matter came before the Court on August 23, 2017, on the above captioned motion. Attending in person was counsel for the debtor in possession, Double Eagle Energy Services, LLC. Considering representations of counsel, the stipulation between the debtor in possession and Gibsland Bank & Trust, and the evidence presented by the debtor in possession,

**IT IS ORDERED** that the debtor in possession may obtain financing through the factoring agreement with Gulf Coast Bank with financing up to an aggregate principal amount of $1,000,000.00 on a final basis, per the agreement introduced at the hearing on the instant motion, and subject to the following additional terms and conditions:

(a) Debtor is immediately authorized upon signing of this Order to borrow pursuant to the Financing or to otherwise sell on a recourse liability basis to Gulf Coast its interests in the Cash Collateral Receivables up to an aggregate principal amount of up to $1,000,000.00, and to pay the fees, charges, costs, discounts and interest as set forth in the Factoring Agreement. Debtor is specifically authorized to use a portion of the initial proceeds of such financing to pay the reasonable costs of Gulf Coast's counsel in connection with the proposed Financing.

(b) Debtor is expressly authorized and empowered to enter into, execute, deliver, and perform the Factoring Agreement. The terms and conditions of the Factoring Agreement are hereby approved, and Debtor is authorized to execute, deliver, and perform, and do all acts that may be required in connection with, the Factoring Agreement. The Factoring Agreement shall constitute valid and binding obligations of Debtor, enforceable against it in accordance with its terms. The terms and conditions of the Factoring Agreement and this Order shall apply to each and every purchase by Gulf Coast of a Cash Collateral Receivable. For purposes of this Order, "Cash Collateral Receivables" includes (i) all of Debtor's post-petition accounts, chattel paper, payment intangibles, and other receivables, that are dated after the date of the filing of Debtor's bankruptcy petition (July 17, 2017), including invoices or statements arising out of the rendering of services or the leasing of equipment, (ii) and the proceeds thereof, including all such amounts from time to time deposited into the controlled account maintained with Gulf Coast, and (iii) the proceeds from sale of inventory, regardless of whether any other entity has a pre-petition security interest in inventory. The term "Cash Collateral Receivables" as used herein does not include any of the following: (i) the proceeds of, from or on account of movable property (other than inventory) in which a pre-petition secured party has or would have an otherwise continuing security interest under Section 552 of the Bankruptcy Code; (ii) proceeds (which otherwise are subject to a prior

perfected security interest) of, from or on account of (a) casualty loss involving movable property, equipment and/or inventory, (b) the sale or other disposition of any movable property or equipment (other than inventory); (iii) any claims relating to the unpaid Mark West contract/account and as to AIIC litigation pending in state court: (and (iv) any preference or fraudulent conveyance recovery actions under Chapter V of the Bankruptcy Code.

(c) With respect to all of the obligations and indebtedness of Debtor arising under the Factoring Agreement, Gulf Coast hereby is granted, pursuant to Bankruptcy Code Section 364(c)(1), an administrative claim having priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b), with no priority exceptions. No other claim or interest shall be granted a priority superior or pari passu to that of the claim or interest of Gulf Coast in the Cash Collateral Receivables so long as any portion of the Financing remains outstanding or committed.

(d) As security for the payment and performance of all of the obligations of the Factoring Agreement, and pursuant to Bankruptcy Code Sections 364(c) and (d) and in fulfillment of Debtor's agreements under the Factoring Agreement, Gulf Coast hereby is granted (effective immediately without the necessity of execution by Debtor or security agreements, financing statements, or otherwise, although the Factoring Agreement itself is a security agreement) a valid, enforceable, attached, and automatically perfected assignment of and security interest in and lien on all of the existing and hereafter acquired right, title, and interest of Debtor and Debtor in Possession in and to the Cash Collateral Receivables, that shall be a senior and first priority assignment of and security interest in and lien on all of the Cash Collateral Receivables. The security interests and liens granted to Gulf Coast hereunder shall not be (i) subject to any lien or security interest that is avoided and preserved for the benefit of Debtor's estate under Bankruptcy

Code Section 551, (ii) subordinated to or made pari passu with any other lien or security interest under Bankruptcy Code Section 364(d) or otherwise; (iii) subordinate to any other claim, interest, lien or security interest in the Cash Collateral Receivables, including any lien for unpaid taxes due to the United States of America or any state or political subdivision, or any security interest in Cash Collateral Receivables granted in any prior order of this Court. To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the assignments, security interests and liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law hereby is preempted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, otherwise applicable federal law, and the judicial power of the Bankruptcy Court (provided that Gulf Coast may still take such steps as it wishes to perfect its security interests and liens under otherwise applicable non-bankruptcy law without waiving the benefits of this provision of this Order and Debtor is authorized to execute, deliver, and perform, and do all acts that may be required by Gulf Coast in order to perfect such security interests and liens under otherwise applicable non-bankruptcy law).

(e) Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents and to pay fees that may be required or necessary for its performance under the Financing, including, without limitation: (a) the nonrefundable payment to Gulf Coast of all fees and discounts required by the terms of the Agreement, and (b) the reimbursement to Gulf Coast of costs and expenses including, without limitation, reasonable attorneys' fees and disbursements as provided in the Factoring Agreement.

(f) The automatic stay created by Bankruptcy Code Section 362 hereby is modified and vacated to the extent necessary to permit Gulf Coast to perform in accordance with, and

exercise its rights pursuant to, the Factoring Agreement, including, without limitation, the right to take steps under otherwise applicable non-bankruptcy law to directly collect Cash Collateral Receivables, to bring enforcement actions against account debtors in connection therewith, to exercise rights under the Cash Collateral Receivables, to apply and set off Cash Collateral Receivables receipts against Debtor's obligations under the Factoring Agreement, to establish, maintain and to charge reserve accounts as provided in the Factoring Agreement, including the retention of cash collateral proceeds as security for Debtor's obligations under the Factoring Agreement on the terms set forth in the Factoring Agreement, and to exercise, upon the occurrence of an Event of Default (as defined in the Factoring Agreement) all rights and remedies provided for in the Factoring Agreement or available at law (including state law) or in equity. Gulf Coast is hereby authorized to take steps under otherwise applicable non-bankruptcy law to directly collect Cash Collateral Receivables, to bring enforcement actions against account debtors in connection therewith and to settle payment of such accounts for such amount as it may elect in its sole discretion, to exercise rights under the Cash Collateral Receivables, to apply and set off Cash Collateral Receivables receipts against Debtor's obligations under the Factoring Agreement, to establish, maintain and to charge reserve accounts as provided in the Factoring Agreement, and to exercise, upon the occurrence of an Event of Default (as defined in the Factoring Agreement) all rights and remedies provided for in the Factoring Agreement or available at law (including state law) or in equity.

(g) The Factoring Agreement and the provisions of this Order shall be binding upon Gulf Coast and Debtor and their respective successors and assigns (including any representative hereinafter appointed for the estates of Debtor) and shall inure to the benefit of Gulf Coast and its successors and assigns.

**IT IS FURTHER ORDERED** that the obligations incurred pursuant to this Order shall be secured by a first-in-priority security interest on the Cash Collateral Receivables of the debtor in possession, and a second in priority security interest (behind Gibsland Bank & Trust) on equipment and/or inventory of the estate.

**IT IS FURTHER ORDERED** that the arguable interest that Gibsland Bank & Trust has or may have, in what may be Cash Collateral Receivables and/or pertaining to invoice no. 172003-1, shall be satisfied with an immediate payment (out of the first provision of funding from Gulf Coast Bank pursuant to this Order) in the amount of $8,300.00, which amount shall be paid by the Debtor following its receipt of the initial funding from Gulf Coast Bank.

**IT IS FURTHER ORDERED** that this motion is granted without prejudice to the right of the debtor in possession to seek further post-petition financing.

###

Respectfully submitted by:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

BY: /s/Bradley L. Drell
     Bradley L. Drell (Bar Roll #24387)
     B. Gene Taylor III (Bar. Roll # 33407)
     P. O. Box 6118
     Alexandria, LA   71307-6118
     Telephone (318) 445-6471
     Fax: (318) 445-6476
     e-mail: bdrell@goldweems.com
**ATTORNEYS FOR DEBTORS IN POSSESSION**

*and*

**ROGERS, CARTER & PAYNE, LLC**

BY: /s/ E. Keith Carter
      E. Keith Carter, La. Bar No. 16,847
      4415 Thornhill, Second Floor, Suite A
      Shreveport, Louisiana 71106
      Telephone: (318) 861-1111
      Fax: (318) 868-2323
      ekcarter@rogerscarterlaw.com
**ATTORNEYS FOR GIBSLAND BANK & TRUST**